**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

WILLIAM BOBBY BROWN          :
                             :
    Plaintiff,               :
                             :
    v.                       :          CIVIL ACTION NO.
                             :          2:14-CV-00015-RWS
GREAT NORTHERN               :
INSURANCE CO.,               :
                             :
    Defendant.               :

## <u>ORDER</u>

This case comes before the Court on Defendant's Motion for Summary

Judgment [17], Plaintiff's Motion to Defer Ruling on Summary Judgment [18],

Plaintiff's Cross Motion for Summary Judgment [23], Defendant's Motion to

Alter Order Granting Plaintiff's Request for Depositions [38], Plaintiff's

Supplement to Cross Motion for Summary Judgment [40], Defendant and

SunTrust's Motions to Quash [43, 47, 55], and Louis Levenson's Petition for

Attorney's Lien [59]. After reviewing the record, the Court enters the following

Order.

## Background

**I.     Factual Background**

This action arises out of Plaintiff's eviction from his home and subsequent insurance claim to recover damages to personal property destroyed in the course of the eviction.  Defendant denied coverage, and this action followed.

At the time of his eviction, Plaintiff William Bobby Brown had a policy of insurance issued by Defendant Great Northern Insurance Company, effective March 16, 2012, through March 16, 2013, providing coverage for property located at 9140 Ivyshaw Drive, Gainesville, Georgia.  (Pl.'s Statement of Material Facts ("SMF"), Dkt. [23-1] ¶ 1.)  SunTrust Bank, Plaintiff's mortgagee, foreclosed on the property on August 6, 2012.  (Id. ¶ 4.)  Apparently, during the foreclosure proceedings, counsel for SunTrust represented that SunTrust would not attempt to take possession of the property because of environmental issues that would prevent a subsequent sale or transfer of the property.  (Id. ¶ 12.)

In any event, SunTrust initiated a dispossessory proceeding on September 14, 2012, in the Forsyth County Magistrate Court by filing a petition for writ of possession.  (Id. ¶ 5.)  The magistrate court held a hearing on the petition on October 2, 2012, at which SunTrust and Plaintiff agreed to a consent order

2

("Consent Order") that the magistrate judge signed and entered.  (Id. ¶¶ 6-7;

Consent Order, Dkt. [1-2].)  The form the magistrate judge used was labeled

"JUDGMENT" and stated, "ORDERED and ADJUDGED that a WRIT OF

POSSESSION (shall) (shall not) be issued:" followed by numerous options the

judge could select by checking boxes and filling in blanks according to how he

or she decided to rule.  For example, beside option "a." the judge could check a

box for a writ of possession to be issued "Instanter."  In this case, the judge

checked a box stating that SunTrust had a consent judgment against "William

Bobby Brown & All others."  Below that line, the Consent Order stated, "A writ

of possession shall issue in favor of [SunTrust] on October 31, 2012 at 11:59

p.m. [Brown] shall be entitled to remain in possession of the Subject Property

until said date/time."  Plaintiff argues that the order itself did not constitute a

writ of possession, while Defendant believes that it did.

October 31, 2012 passed without Plaintiff leaving the premises.  Plaintiff

states he remained in possession of the property because he was under the

impression from SunTrust's earlier representations that they would not seek

possession of the property.  (Pl.'s SMF, Dkt. [23-1] ¶ 12.)  Plaintiff also stresses

that he was never served a writ of possession and thus did not have time to remove his personal property before the eviction happened.  (Id. ¶ 14.)

On December 18, 2012, this Court dismissed claims Plaintiff brought in an earlier suit against SunTrust for fraudulent inducement, negligence, and intentional infliction of emotional distress, among others.  See Brown v. SunTrust Mortg., Inc., No. 2:12-cv-00120-RWS, Dkt. [43].  The Court dismissed the last defendant in that action and closed the case on January 11, 2013, and SunTrust proceeded to evict Plaintiff from the premises on January 16, 2013.  (Pl.'s SMF, Dkt. [23-1] ¶ 14.)  The Forsyth County Sheriff's Office and employees of a company called Primo Cleanup evicted Plaintiff from the property, removed all his personal property, and placed it in the yard.  (Id.)  Plaintiff alleges that Primo Cleanup destroyed furniture with chainsaws and deliberately threw items out of windows.  (Id. ¶ 17.)  Defendants contend that records of the Forsyth County Sheriff's Office dispute this assertion.  (Def.'s Resp. to Pl.'s SMF, Dkt. [26] ¶ 17.)  Plaintiff states he did not have time to remove all his personal property, and that he could not go back to his home because he was not allowed to return to the gated neighborhood.  (Pl.'s SMF,

4

Dkt. [23-1] ¶¶ 18-19.)  The items left out in the yard were damaged by rain that evening.  (Id. ¶ 16.)

Plaintiff filed an insurance claim with Defendant on January 28, 2013, seeking damages under his insurance policy for the personal items that were damaged, destroyed, stolen, or lost during the eviction.  (Id. ¶ 21.)  On June 14, 2013, Defendant determined there was no coverage under the "Neglect" and "Confiscation" exclusions of the policy.  (Id. ¶ 22.)  The Neglect Exclusion provides: "Neglect.  We do not cover any loss caused by your failure to use all reasonable means to protect property before, at, or after the time of a loss."  (Id. ¶ 23; Policy, Dkt. [1-5] at 36.)  The policy also states: "The words 'caused by' mean any loss that is contributed to, made worse by, or in any way results from that peril." (Policy, Dkt. [1-5] at 33.)  The Confiscation Exclusion provides:

> We do not cover any loss caused by the confiscation, destruction, or seizure of property by or under the order of any government or public authority.  But if the confiscation, destruction or seizure of property was ordered by any government or public authority to prevent the spread of fire, we do provide coverage if the loss caused by fire would be covered under this part of your policy.

(Id. at 35.)

5

Plaintiff challenged Defendant's denial of coverage, but after Defendant declined to change its position in a December 18, 2013 letter, Plaintiff filed this action on January 15, 2014.  (Pl.'s SMF, Dkt. [23-1] ¶¶ 25-26.)  Plaintiff also filed a related wrongful-foreclosure suit against SunTrust Bank, which this Court dismissed on September 30, 2014.  See Brown v. SunTrust Bank, No. 2:14-cv-00014-RWS, Dkt. [39].  In this action, Plaintiff brings claims against Defendant for breach of contract and bad faith.

## II.    Procedural Background

Defendant moved for summary judgment on April 14, 2014, arguing that Plaintiff was negligent in failing to remove his personal property from his home before being evicted pursuant to a writ of possession.  The next day, Plaintiff responded with a motion to defer ruling on Defendant's motion for summary judgment, arguing that he needed time to engage in discovery regarding the writ of possession, which Plaintiff argues was never issued.  (See Mot. to Defer Ruling, Dkt. [18] at 5.)  In an affidavit attached to Plaintiff's motion, Plaintiff's counsel also argued that discovery could uncover facts showing that Defendant refused the insurance claim in bad faith or that Plaintiff had no opportunity to

6

take necessary steps to protect his property before the January 16, 2013 eviction. (See Levenson Aff., Dkt. [18-2] ¶ 5.)

On May 5, 2014, Plaintiff filed a cross motion for summary judgment and response in opposition to Defendant's motion for summary judgment. (See Cross Mot. for Summ. J., Dkt. [23].) Discovery continued while those motions were pending, and the Court granted Plaintiff's request to issue subpoenas for depositions. (See June 4, 2014 Order, Dkt. [36].) Defendant then filed a motion to alter the Court's order, asserting that two individuals Plaintiff wished to subpoena could not offer any testimony relevant to the claims in this case because they were engineering or environmental consultants who knew about the environmental problems associated with Plaintiff's property but did not know anything about the insurance contract or the eviction. (See Mot. to Alter Order, Dkt. [38].) Within a few days, Plaintiff issued several subpoenas, and Defendant and SunTrust filed three motions to quash. Defendant also filed a motion for direction regarding the conduct of depositions, expressing concern that Plaintiff, who at this time was proceeding pro se, was being represented by non-lawyer Ron Mayhew, Plaintiff's power of attorney. (See Def.'s Mot. for Direction, Dkt. [39].) Because it appeared that Mr. Mayhew had drafted filings

7

on behalf of Plaintiff and because Mr. Mayhew is not an attorney, the Court

granted Defendant's motion and entered an order enjoining Mr. Mayhew from

conducting or legally participating in the depositions of any parties or witnesses

in this matter.  (See June 25, 2014 Order, Dkt. [48].)  In addition, because

Plaintiff noticed more depositions before the motions to quash became ripe, the

Court stayed the taking of depositions so Plaintiff would have an opportunity to

file responses.  (See June 30, 2014 Order, Dkt. [57].)

Finally, on July 11, 2014, Plaintiff's former counsel filed a Petition for

Attorney's Lien [59], arguing that Plaintiff terminated him without cause after

he performed substantial work in the case, including both seeking and opposing

summary judgment.  Since October 10, 2014, Plaintiff has been represented by

new counsel.  With this background and procedural posture in mind, the Court

turns to the pending motions.

## Discussion

### I.      Motions for Summary Judgment

#### A.      Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be

granted "if the movant shows that there is no genuine dispute as to any material

AO 72A
(Rev.8/82)

fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable

AO 72A
(Rev.8/82)

to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

### B.    Analysis

Plaintiff's breach of contract claim is based on Defendant's wrongful denial of insurance coverage.  Defendant's defense is that the Neglect and Confiscation Exclusions of the insurance policy apply.  The majority of the parties' arguments center around whether SunTrust had a valid writ of possession in the first place.  Defendant argues that it did, and because Plaintiff "was aware that his personal property could be removed by eviction on or after

October 31, 2012," he "had a duty to reasonably protect his property by moving it prior to that date." (Def.'s Br., Dkt. [17-1] at 16.) Because he did not, Defendant argues that the Neglect Exclusion applies. Moreover, because Plaintiff's loss occurred as a result of the eviction, Defendant asserts that the Confiscation Exclusion applies.

For his part, Plaintiff argues that SunTrust did not have a valid writ of possession at the time he was evicted. He argues SunTrust needed to obtain another document in addition to the October 2 Consent Order. Because there was no writ of possession, Plaintiff argues the eviction was unlawful and the Confiscation Exclusion is inapplicable. Moreover, he argues that the Neglect Exclusion does not apply because he "had no reason to believe that such loss would occur before it occurred, was unable to prevent the loss during its occurrence, and was prevented from mitigating his loss after the Eviction." (Pl.'s Br., Dkt. [23-2] at 20.)

Before addressing the motions for summary judgment, the Court notes that Plaintiff filed a Motion to Defer Ruling on Defendant's Motion for Summary Judgment [18] in which he asserts that he must be allowed the opportunity for more discovery on these issues. For the reasons discussed

11

below, and because Plaintiff filed a response in opposition to Defendant's

motion for summary judgment, (see Dkt. [23-2]) the Court finds it unnecessary

to defer ruling on Defendant's motion.  Accordingly, Plaintiff's Motion to

Defer Ruling on Defendant's Motion for Summary Judgment [18] is **DENIED**.

On the merits of the summary judgment motions, the Court first

addresses the writ-of-possession issue before examining whether the Neglect or

Confiscation Exclusions apply.  The Court will then turn to Plaintiff's bad faith

claim and related issues.

### 1.   *Writ of Possession*

"Where former owners of real property remain in possession after a

foreclosure sale, they become tenants at sufferance."  Steed v. Fed. Nat'l Mortg.

Corp., 689 S.E.2d 843, 848 (Ga. Ct. App. 2009) (citation, internal quotation

marks, and emphasis omitted).  "The exclusive method whereby a landlord may

evict a tenant is through a properly instituted dispossessory action filed

pursuant to O.C.G.A. § 44-7-50 et seq."  Id.  "After instituting a dispossessory

action and obtaining a writ of possession, the landlord is authorized to evict the

tenant, but the landlord must 'plac[e] the tenant's property on some portion of

the landlord's property or on other specific property designated by the landlord

12

and approved by the executing officer.' " Ikomoni v. Exec. Asset Mgmt., LLC, 709 S.E.2d 282, 286 (Ga. Ct. App. 2011).

Defendant argues that the language in the Consent Order indicates that the intent of the magistrate judge "was for the Consent Order to act as both a final judgment on SunTrust's Petition for Writ of Possession as well as the Writ of Possession itself, which was to self-execute on the date and time certain, as agreed to by the parties." (Def.'s Br., Dkt. [17-1] at 11.)  Thus, Defendant argues that the issuance of a separate document as a writ of possession would constitute a useless act. (Id. at 12.)

Plaintiff responds that Georgia law requires a writ of possession in order to perform an eviction.  Plaintiff does not dispute that he and SunTrust entered into a Consent Order, but he does argue that the Consent Order cannot "function as both the judgment and as the execution arm for the Forsyth County Sheriff to enforce the judgment." (Pl.'s Br., Dkt. [23-2] at 13.)  In other words, Plaintiff asserts that upon obtaining a dispossessory judgment, a party must then obtain a writ of possession to enforce that judgment.  Moreover, he disagrees that the Consent Order was self-executing, citing O.C.G.A. § 9-13-3, which states that "[e]very execution shall follow the judgment upon which it issued

13

and shall describe the parties thereto as described in the judgment."

Furthermore, Plaintiff cites O.C.G.A. § 9-13-10, which requires that

"executions shall be issued by the clerk of the court in which judgment is

obtained, shall bear teste in the name of the judge of such court, shall bear date

from the time of their issuing, [and] shall be directed 'To all and singular the

sheriffs of this state and their lawful deputies.' "

In further support of his legal arguments, Plaintiff attaches certified

copies of other magistrate court orders in dispossessory proceedings using the

same form the magistrate judge used in this case.  (See Dkt. [23-6].)  Plaintiff

explains that "judgments in other cases have been provided with what appears

to be a barcode sticker that states 'Writ of Possession Issued' to recognize that

the judgment had resulted in a Writ of Possession being issued."  (Pl.'s Br., Dkt.

[23-2] at 16.)  There is no barcode sticker stating that a writ of possession had

been issued in this case, however.  (See Consent Order, Dkt. [1-2].)  Plaintiff

has also produced an affidavit from Fulton County Marshal Antonio Johnson,

whose office is responsible for executing writs of possession.  (See Johnson

Aff., Dkt. [23-5] ¶ 3.)  In his affidavit, Johnson states that "after a Plaintiff

obtains a judgment in the Dispossessory Court pursuant to O.C.G.A. § 44-7-55,

14

the Plaintiff applies for a Writ of Possession with the Clerk's office entitling

them to have our deputies assist them in recovering possession of the real

property at issue."  (Id. ¶ 4.)  After the clerk processes the writ of possession, it

is sent to the Marshal's Department for execution.  (Id. ¶ 5.)  Plaintiff argues

that SunTrust did not apply for a writ of possession with the clerk's office, and

thus the Forsyth County Sheriff was not ordered to be on Plaintiff's property.[1]

(Pl.'s Br., Dkt. [23-2] at 17.)

     Defendant next argues that Title 9, Chapter 13's procedural requirements

are inapplicable to dispossessory proceedings to the extent that the statutes

governing dispossessory proceedings differ.  (Def.'s Reply, Dkt. [25] at 4.)

Thus, Defendant contends that O.C.G.A. § 9-13-3's provision that "execution

shall follow the judgment" is inapplicable.  (Id. at 6.)  Instead, under O.C.G.A.

§ 44-7-50 et seq. governing dispossessory proceedings, Defendants argue "there

is no statutory requirement that a Writ of Possession must follow the judgment

and therefore cannot be issued simultaneously."  (Id.)

------

[1]Furthermore, according to Plaintiff, "how the Sheriff of Forsyth County got to the property on January 16, 2013 and who ordered or requested them to be there is still something of a mystery not yet uncovered by discovery."  (Pl.'s Br., Dkt. [23-2] at 17.)

15

After reviewing the parties' briefs and exhibits, the Court cannot conclude as a matter of law that Plaintiff was evicted pursuant to a valid writ of possession. While Defendant insists that the magistrate court's language that "[a] writ of possession shall issue in favor of [SunTrust] on October 31, 2012 at 11:59 p.m." meant that the Consent Order was both a judgment and writ of possession, the Consent Order's language, Georgia law, and copies of other dispossessory judgments indicate otherwise.

First, it is not clear from the language of the Consent Order that it is intended to function as both a judgment and writ of possession. The order bears the heading "JUDGMENT." Even though it states that a writ of possession shall issue on a certain date, it does not state that the order itself constitutes an execution or writ of possession.

Second, Georgia law contemplates a writ of possession separate from a judgment. According to O.C.G.A. § 44-7-55, "If, on the trial of the case, the judgment is against the tenant, judgment shall be entered against the tenant for all rents due and for any other claim relating to the dispute." O.C.G.A. § 44-7-55(a). In the next sentence, contemplating a separate step, the statute reads, "The court shall issue a writ of possession, both of execution for the judgment

16

amount and a writ to be effective at the expiration of seven days after the date

such judgment was entered." Id.  The statute also defines a writ of possession

as "a writ issued to recover the possession of land or other property and such

writ shall not contain restrictions, responsibilities, or conditions upon the

landlord in order to be placed in full possession of the land or other property."[2]

O.C.G.A. § 44-7-49.  A more natural reading and understanding of a writ of

possession is thus a separate execution of the judgment entered by the

---

[2]Plaintiff filed a Supplement to Plaintiff's Cross Motion for Summary Judgment [40] pro se on June 17, 2014, after the motions for summary judgment were submitted to the Court and after Plaintiff noticed termination of his attorney.  Plaintiff argues in the supplement that his previous counsel did not include an argument related to the writ of possession in response to Defendant's motion for summary judgment.  Plaintiff contends that under O.C.G.A. § 44-7-49, a writ of possession "shall not contain restrictions, responsibilities, or conditions upon the landlord in order to be placed in full possession of the land or other property."  O.C.G.A. § 44-7-49.  Plaintiff argues that the Consent Order was not a writ of possession because it allowed Plaintiff to remain in possession of the property until October 31, 2012, and thus placed a restriction or condition on SunTrust's possession of the property.

Defendant objects to Plaintiff's motion, arguing that the filing fails to comply with both Local Rule 7.1(B), which permits the filing of responsive briefs within 21 days of service of the motion for summary judgment, and Local Rule 56.1(A), which states that "the parties shall not be permitted to file supplemental briefs and materials, with the exception of a reply by the movant, except upon order of the court."  LR 56.1(A), NDGa.  Defendant further objects that the supplement was submitted by Plaintiff's power of attorney and should thus not be considered.  Finally, Defendant states that the Consent Order does not place a restriction on a writ of possession as contemplated under O.C.G.A. § 44-7-49.  The Court agrees, and for all these reasons, Plaintiff's Supplement to Cross Motion for Summary Judgment [40] is **DENIED**.

17

magistrate court.  <u>See also</u> BLACK'S LAW DICTIONARY 1610 (6th ed. 1990) (defining writ of possession as "[w]rit of execution employed to enforce a judgment to recover the possession of land.  It commands the sheriff to enter the land and give possession of it to the person entitled under the judgment").

Finally, Plaintiff's exhibits of other magistrate court judgments illustrate that a writ of possession is issued after judgment, at which point a barcode label stating "Writ of Possession Issued" is affixed to the order.  These orders are identical in format to the one in this case.  Below the "JUDGMENT" heading, the orders read, "ORDERED and ADJUDGED that a WRIT OF POSSESSION (shall) (shall not) be issued:" followed by the list of options described in the Background section.  In the first example Plaintiff attaches, the judge marked the box next to the word "Instanter," and the order bears a barcode label showing a writ of possession was issued.  (<u>See</u> Order, Dkt. [23-6] at 2.)  On the other hand, the Consent Order in this case lacks such a label.  So, given the identical format of both orders, Defendant's acknowledgment that SunTrust did not obtain a separate writ of possession from the clerk, and the absence of a label on the order stating that a writ of possession had been issued, Defendant

fails to show as a matter of law that SunTrust obtained a valid writ of possession before evicting Plaintiff.

2.     *Neglect Exclusion*

Although the parties strenuously argue over whether SunTrust had a valid writ of possession, the fundamental basis for Defendant's denial of Plaintiff's insurance claim is the application of exclusions in the insurance policy. Defendant first cites the Neglect Exclusion, stating that Plaintiff had a duty to reasonably protect his property by moving it before October 31, 2012, the date identified in the Consent Order.  Because "Plaintiff failed to undertake any reasonable means to protect his personal property from the dangers inherent in the Eviction," Defendant argues that Plaintiff abandoned his personal property, and thus the Neglect Exclusion applies.  (Def.'s Br., Dkt. [17-1] at 16.)  See also O.C.G.A. § 44-7-55(c) (stating that a writ of possession "shall authorize the removal of the tenant or his personal property," "that the landlord shall not be a bailee of such personal property and shall owe no duty to the tenant regarding such property," and "such property shall be regarded as abandoned" after execution of the writ).

19

Plaintiff argues that the Neglect Exclusion does not bar his claim because he "had no reason to believe that such loss would occur before it occurred, was unable to prevent the loss during its occurrence, and was prevented from mitigating his loss after the Eviction." (Pl.'s Br., Dkt. [23-2] at 20.)  As explained above, Plaintiff disputes that SunTrust evicted him pursuant to a writ of possession.  But Defendant further argues that even if SunTrust did not have a writ of possession, "Plaintiff was not only aware that his property could be removed from his home on or after October 31, 2012, but he agreed to it in a binding consent order." (Def.'s Br., Dkt. [17-1] at 17.)  According to Defendant, "The Consent Order evidences that Plaintiff was on notice that the Eviction would occur after the date specified in the Consent Order," so his failure to remove his belongings constituted a "failure to use all reasonable means to protect property before, at, or after the time of a loss." (Id.)

The Court finds that there is a jury question regarding whether Plaintiff failed to take reasonable means to protect his personal belongings before he was evicted.  If SunTrust lacked a valid writ of possession, Plaintiff was not on notice of an imminent eviction.  While Defendant insists that Plaintiff should have moved out on October 31, 2012—with or without a writ of

20

possession—Defendant cites no case law showing that a neglect exclusion applies if a policyholder fails to do so.  Furthermore, Plaintiff was not evicted until January 16, 2013, undermining Defendant's argument that Plaintiff should have known that an eviction was imminent after October 31, 2012.[3]  Thus, even if the Consent Order acted as both a judgment and writ of possession, the Court could not say as a matter of law that Plaintiff failed to take any reasonable steps to protect his personal property.  Without any clear authority on the issue, the Court finds that the issue of Plaintiff's reasonableness is best reserved for a jury.

### 3.     *Confiscation Exclusion*

Defendant next argues that Plaintiff's personal property was destroyed as a result of an order by a government authority and is thus excluded under the Confiscation Exclusion.  The Confiscation Exclusion provides: "We do not cover any loss caused by the confiscation, destruction, or seizure of property by

---

[3]Plaintiff argues that he had a reasonable belief based on a conversation with SunTrust's counsel in the foreclosure proceedings that SunTrust would not take the property because it had some environmental problems.  (See Pl.'s Br., Dkt. [23-2] at 20.)  Defendant argues that it was unreasonable for Plaintiff to rely on statements foreclosure counsel made before Plaintiff agreed to the Consent Order, and that in any event these statements are hearsay.  (See Def.'s Resp., Dkt. [25] at 12.)  The Court does not rely on Plaintiff's argument in finding a material factual dispute, however.

AO 72A
(Rev.8/82)

or under the order of any government or public authority." (Def.'s SMF, Dkt. [17-2] ¶ 16.) Because Defendant has failed to show as a matter of law that SunTrust evicted Plaintiff pursuant to a valid writ of possession, Defendant is unable to show that Plaintiff's property was destroyed under an order of a government authority. Accordingly, Defendant is not entitled to summary judgment based on the Confiscation Exclusion, either.

### 4.    *Other Issues*

In addition to the breach of contract claim, Plaintiff brings a claim of bad faith under O.C.G.A. § 33-4-6, which provides:

> In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer . . . and all reasonable attorney's fees for the prosecution of the action against the insurer.

O.C.G.A. § 33-4-6(a). "As the statute imposes a penalty, it is strictly construed." Primerica Life Ins. Co. v. Humfleet, 458 S.E.2d 908, 910 (Ga. Ct. App. 1995).

Defendant argues that Plaintiff failed to demand payment sixty days before filing suit and that its coverage analysis was made in good faith. (See

Def.'s Br., Dkt. [17-1] at 20.)  Defendant points out that Plaintiff demanded

payment under O.C.G.A. § 33-4-6 on November 30, 2013, but filed suit on

January 15, 2014, less than 60 days later.  (See Demand Letter, Dkt. [17-3].)

Plaintiff does not deny that he filed suit before the 60-day period passed.  (See

Pl.'s Br., Dkt. [23-2] at 21.)  Instead, he argues that the purpose of the statute

was accomplished because Defendant had an opportunity to decide whether to

pay the demand but declined to cover Plaintiff's loss in a December 18, 2013

letter.  (See id. at 21-22; Pl.'s SMF, Dkt. [23-1] ¶ 26.)  Although "the purpose

of the statute's demand requirement is to adequately notify an insurer that it is

facing a bad faith claim so that it may make a decision about whether to pay,

deny, or further investigate the claim," the statute provides that the insurance

company may make that decision "within the 60-day deadline."  Primerica, 458

S.E.2d at 910.  And because the statute is strictly construed, the Court finds that

an individual may only seek bad faith penalties once 60 days have passed

without an insurer paying a covered loss, even if an insurer purports to deny

coverage before the expiration of the deadline.  Because Plaintiff filed suit less

than 60 days after making his demand, he is not entitled to bad faith penalties

under O.C.G.A. § 33-4-6.

23

Even if Plaintiff had waited 60 days to file his claim, the Court finds that bad faith penalties are not warranted. "Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact." Assurance Co. of Am. v. BBB Serv. Co., 576 S.E.2d 38, 41 (Ga. Ct. App. 2002) (quoting Moon v. Mercury Ins. Co. of Ga., 559 S.E.2d 532, 534-35 (Ga. Ct. App. 2002)). Because the Court finds that there is a factual dispute in this case, Defendant had a reasonable ground to contest coverage, and thus penalties for bad faith are not authorized.

Finally, Defendant argues that any extracontractual claims against it are barred under Georgia law. Noting that Plaintiff seeks punitive damages, attorney's fees and expenses, and damages for intentional or negligent infliction of emotional distress, Defendant argues that an insured's damages related to the insurer's conduct in handling a claim is limited to penalties under O.C.G.A. § 33-4-6. (See Def.'s Br., Dkt. [17-1] at 22.) Plaintiff does not respond to Defendant's argument, and thus it is treated as unopposed. See LR 7.1B, NDGa. Indeed, under Georgia law "[t]he penalties contained in O.C.G.A. § 33-4-6 are the exclusive remedies for an insurer's bad faith refusal to pay insurance

24

proceeds." Howell v. S. Heritage Ins. Co., 448 S.E.2d 275, 276 (Ga. Ct. App. 1994); see also Parsells v. Orkin Exterminating Co., 322 S.E.2d 91, 93 (Ga. Ct. App. 1984) ("Generally, punitive damages are not recoverable for breach of contract, even though the breach may be in bad faith.").  Moreover, a "mere breach of a valid contract amounting to no more than a failure to perform in accordance with its terms does not constitute a tort or authorize the aggrieved party" to pursue a tort action, even if the alleged breach caused great hardship. Tate v. Aetna Cas. & Sur. Co., 253 S.E.2d 775, 777 (Ga. Ct. App. 1979) (quoting Mauldin v. Sheffer, 150 S.E.2d 150, 153 (Ga. Ct. App. 1966)).  Here, Plaintiff's claim arises solely from Defendant's alleged breach of a contractual duty to cover his insurance claim.  Therefore, Plaintiff may not recover punitive damages, attorney's fees, or damages for emotional distress.

In sum, the Court finds that there is a jury question with respect to whether Plaintiff "fail[ed] to use all reasonable means to protect property before, at, or after the time of a loss" under the Neglect Exclusion.  (See Policy, Dkt. [1-5] at 36.)  In addition, there is a factual dispute about the existence of a valid writ of possession, and so the Court cannot resolve whether the Confiscation Exclusion applies.  As a result of these disputes, however,

25

Defendant is entitled to summary judgment on Plaintiff's bad faith claim under

O.C.G.A. § 33-34-6 based on Defendant's denial of coverage.  Furthermore,

Defendant is entitled to summary judgment on Plaintiff's demand for punitive

damages, attorney's fees, and damages for emotional distress.

## II.    Motion to Alter Order [38] and Motions to Quash [43, 47, 55]

The next set of motions arises from Plaintiff's issuance of subpoenas to

several witnesses.  After the Court granted Plaintiff's motion for subpoenas,

Defendant filed a motion asking the Court to prohibit Plaintiff from taking

depositions of Zach Handach and Dave Centofanti because they have no

knowledge of the events giving rise to this litigation.  (Mot. to Alter Order

Granting Pl.'s Request for Depos., Dkt. [38].)  After Plaintiff issued his

subpoenas, Defendant filed motions to quash the subpoenas of Handach and

Centofanti, and SunTrust filed a motion to quash the subpoena of its foreclosure

counsel, Monica Gilroy.

Defendant and SunTrust assert in their motions to quash that Mr.

Mayhew, Plaintiff's power of attorney, issued the subpoenas, which are

therefore invalid.  In response, Plaintiff argues, "Mr. Mayhew is empowered as

my Power of Attorney and he is to protect my interests, which he is doing by

acting on my behalf and conducting certain legal functions on my behalf as authorized in the Georgia Durable Power of Attorney, which I cannot do because of my disabilities."  (Pl.'s Resp. to Mots. to Quash, Dkt. [58] ¶ 6.) Plaintiff further insists that Mr. Mayhew does not represent him as an attorney, but that Plaintiff is a pro se litigant with Mr. Mayhew acting as his power of attorney.  (Id. ¶ 1.)

Under 28 U.S.C. § 1654, "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."  "By its own terms § 1654 requires those persons who seek to represent themselves in federal courts to do so 'personally,' thereby foreclosing on the possibility that such representation could occur by proxy."  Jacox v. Dep't of Defense, No. 5:06-cv-184 (HL), 2007 WL 118102, at *1 (M.D. Ga. Jan. 10, 2007).  Under Georgia law, it is unlawful for any person other than a licensed attorney "[t]o render legal services of any kind in actions or proceedings of any nature."  O.C.G.A. § 15-19-51(a)(6).  Consequently, "[t]he existence of a power of attorney does not authorize a non-lawyer to conduct legal proceedings on behalf of a pro se litigant where the law otherwise requires

27

that such proceedings be conducted by a licensed attorney." <u>Jacox</u>, 2007 WL 118102, at *1.

In this case, Plaintiff acknowledges that Mr. Mayhew has been conducting certain legal functions on his behalf.  Moreover, the request for subpoenas and the subpoenas themselves appear to have been issued by Mr. Mayhew.  The pro se filings by Plaintiff each bear Mr. Mayhew's name and contact information at the bottom.  (<u>See, e.g.</u>, Mot. for Subpoenas, Dkt. [35] at 4.)  The Handach and Gilroy subpoenas each list Mr. Mayhew as issuing the subpoena as Plaintiff's power of attorney.  (<u>See</u> Handach Subpoena, Dkt. [42]; Gilroy Subpoena, Dkt. [47-2].)  And, while the Centofanti subpoena does not list Mr. Mayhew as Plaintiff's power of attorney, the subpoena does include the same contact information Mr. Mayhew provides for himself on other filings.  For these reasons, the Court finds that Mr. Mayhew issued subpoenas on behalf of Plaintiff even though Mr. Mayhew is not an attorney.  Further, because Plaintiff is again represented by counsel, who can seek subpoenas or argue the relevance of the witnesses on Plaintiff's behalf, the Court declines to rule on the merits of the subpoenas at this time.  Therefore, the Court **GRANTS without**

28

**prejudice** the motions to quash [43, 47, 55] and **DENIES as moot** Defendant's

Motion to Alter Order [38].

## III.    Petition for Attorney's Lien [59]

On July 11, 2014, Plaintiff's former counsel, Louis Levenson, filed a

Petition for Attorney's Lien [59] under O.C.G.A. § 15-19-14.  "If an attorney at

law files his assertion claiming a lien on property recovered in an action

instituted by him, within 30 days after a recovery of the same, his lien shall bind

all persons."  O.C.G.A. § 15-19-14(d).  So, while the filing was designated as a

pending motion, the notice claiming a lien was sufficient, and the Court need

not make a ruling on Mr. Levenson's lien.  See Lipton v. Warner, Mayoue, &

Bates, P.C., 492 S.E.2d 281, 283 (Ga. Ct. App. 1997) ("An attorney lien arises

upon the attorney's employment and is perfected at the time of the ultimate

recovery of the judgment by the client.").

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment

[17] is **GRANTED in part** and **DENIED in part**.  It is **GRANTED** as to all

claims except for breach of contract.  Plaintiff's Motion to Defer Ruling on

Summary Judgment [18], Plaintiff's Cross Motion for Summary Judgment [23],

and Plaintiff's Supplement to Cross Motion for Summary Judgment [40] are **DENIED**.

Defendant and SunTrust's Motions to Quash [43, 47, 55] are **GRANTED without prejudice**. Therefore, Defendant's Motion to Alter Order Granting Plaintiff's Request for Depositions [38] is **DENIED as moot**.

In addition, the Clerk is **DIRECTED** to remove Louis Levenson's Petition for Attorney's Lien [59] as a pending motion.

Finally, consistent with the Court's September 12, 2014 Order [64] granting an extension of time for discovery after ruling on the above motions, the parties shall confer to agree on a proposed scheduling order. If the parties cannot agree, they shall advise the Court that a scheduling conference is necessary.

**SO ORDERED**, this  2nd  day of March, 2015.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE


30